```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF WASHINGTON

SUSAN I. CONKLING,              )
                                )   No. CV-10-230-CI
          Plaintiff,            )
                                )   ORDER GRANTING DEFENDANT'S
v.                              )   MOTION FOR SUMMARY JUDGMENT
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )
```

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 13, 16.) Attorney Maureen J. Rosette represents Susan I. Conkling (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. (ECF No. 7.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment, and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff protectively filed for disability insurance benefits (DIB) and Supplemental Security Income (SSI) on February 21, 2008. (Tr. 17; 129-45.) She alleged she is disabled due to a myriad of problems including chest pains, dizziness, rheumatoid arthritis, fibromyalgia, bipolar, hearing loss (complete in one ear, partial in the other), COPD, and swelling in her knees. (Tr. 55; 57-58, 60-64;

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

91; 157; 215.) Her claim was denied initially and on reconsideration. (Tr. 87-94; 98-101.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on August 28, 2009, before ALJ R.J. Payne. (Tr. 38-80.) Plaintiff, who was represented by counsel, and medical expert Arvin Kline, M.D., testified. (Tr. 44-80.) The ALJ denied benefits on October 5, 2009, and the Appeals Council denied review. (Tr. 17-32; 1-3.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings and are briefly summarized here. At the time of the hearing, Plaintiff was 49 years old with a ninth grade education. She earned a GED and completed a course at Interface Computer School. (Tr. 52.) Plaintiff lives in a house with her boyfriend, "a little tiny pot belly pig," a goose and "a few little dogs." (Tr. 70-71; 76.) She smokes five to six cigarettes per day, down from two to three packs a day. (Tr. 62-63.) She also smokes "a bowl" of marijuana every night before bed. (Tr. 44-45; 573.) Plaintiff has past work experiences as a food server and a fabric stocker at Joanne Fabrics. (Tr. 53-55.) Plaintiff testified that if she does anything too strenuous, she experiences chest pains. (Tr. 55.) She also testified that she is frequently dizzy, she is completely deaf in her right ear and partially deaf in the left, she has rheumatoid arthritis, she is bi-polar, her knees swell everyday, and she gets disoriented when she drives. (Tr. 59-65.) Plaintiff reported that she exercises by riding her horse "at least once a day" for about thirty minutes. (Tr. 65-66.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the

Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL EVALUATION PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). This burden is met once a claimant establishes that a medically determinable physical or mental impairment prevents her from engaging in her previous occupation. 20 C.F.R. §§ 404.1520(a), 416.920(a). "This requires the presentation of 'complete and detailed objective medical reports of his condition from licensed medical processionals.'" *Meanel v.*

*Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 7, 2007, the alleged onset date. (Tr. 19.) At step two, he found Plaintiff has the following severe impairments: ischemic heart disease, heart spasms, chronic obstructive pulmonary disease, emphysema an/or asthma, hearing loss, and somatoform disorder. (Tr. 19.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 23.) At step four, he found Plaintiff has the residual functional capacity to perform "medium work" as defined in CFR § 404.1567(c) and § 416.967(c) except she should refrain from noisy environments, she needs to wear a hearing aide and should avoid concentrated exposure to noise, odors and gases. (Tr. 25.) The ALJ found Plaintiff is capable of performing past relevant work as a stocker in a fabric store. (Tr. 31.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues that

substantial evidence does not exist to support the ALJ's decision. Specifically, Plaintiff argues that the ALJ erred by giving greater weight to non-treating doctors, and failed to set forth the required reasoning for rejecting the opinion of her treating physician Thomas J. Boone, M.D. (ECF No. 14 at 8-9.) She also argues that no evidence in the record supports the conclusion that Plaintiff can perform medium work. (ECF No. 14 at 9.) Defendant argues the ALJ properly considered the opinion evidence, determined Plaintiff's residual functional capacity, and correctly concluded Plaintiff is not disabled. (ECF No. 17 at 6-12.)

**1. Opinion Evidence**

Plaintiff argues the ALJ improperly rejected the opinion of treating physician Thomas J. Boone, M.D., and by giving greater weight to the opinions of non-treating physicians. (ECF No. 14 at 8-9.) In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews*, 53 F.3d at 1043. Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Secretary of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, 81 F.3d at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). However, the opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews*, 53 F.3d at 1043; *Lester*, 81 F.3d at 830-31.

Cases have upheld the rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, 81 F.3d at 831, citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results). Thus, case law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians. *Andrews*, 53 F.3d at 1039.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

"'Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.'" *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011), quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The law reserves the disability determination to the Commissioner. 20 C.F.R. § 404.1527(e)(1).

In this case, the ALJ found that after reviewing the record as a whole, the opinions of Dr. Klein and Dr. Staley should receive the most weight. (Tr. 29.) The ALJ noted that Plaintiff's description of her symptoms was "generally unpersuasive," her admitted activities undermine the claimed severity of the symptoms, and Plaintiff was inconsistent[1] throughout the record. (Tr. 29.)

With regard to treating physician Dr. Boone, the ALJ found his opinion was vastly different from the other medical providers. (Tr. 30.) Dr. Boone filled out forms for the Department of Social and

---

[1] The ALJ's observation that Plaintiff "has repeatedly told psychologists and medical providers she has no history of substance use" is not entirely accurate. (Tr. 29.) The medical records reveal that Plaintiff did on occasion, but not always, admit her marijuana use to providers. (Tr. 304; 358; 373; 449; 573.) Because the ALJ's other reasons for discounting Plaintiff's credibility are amply supported by the record, this error was harmless. See *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security context where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.").

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

Health Services (DSHS) that opined Plaintiff's work level should be "sedentary." However, the ALJ found that the records of Dr. Boone do not support a residual functioning capacity of sedentary work activities, and the record does not contain medical test results or medical facts that would support a sedentary work level. The ALJ also found that Dr. Boone's notes were "sparse and without explanation," and the notes included many references of "unsure" and the need for additional consultations. (Tr. 30.) As a result, the ALJ concluded Dr. Boone's treatment notes and conclusions lacked an indicium of reliability. (Tr. 30.)

First, it is within the province of the ALJ, and not a treating physician, to make the determination of Plaintiff's level of impairment or disability. See *McLeod*, 640 F.3d at 885. As a result, Dr. Boone's sedentary assessment is not entitled to deference by the ALJ.

Additionally, contrary to Plaintiff's claims, the ALJ properly provided specific and legitimate reasons supported by the record for rejecting Dr. Boone's sedentary assessment. For example, Dr. Boone saw Plaintiff and completed a DSHS form twice in 2006 and 2007, and once in 2008. On each form, Dr. Boone indicates that Plaintiff's work exertional level is "sedentary." (Tr. 510; 516; 521; 529.) Yet, under recommendations to improve employability, in 2006 Dr. Boone wrote "need cardio consult" and "unsure." (Tr. 511; 517.) In 2007, Dr. Boone's opinion was that Plaintiff needed a "neuro consult" and to "cont[inue] card[io] eval[uation]." (Tr. 522; 530.) In 2008, Dr. Boone wrote that "nothing" could be done to improve Plaintiff's employability, and that she had dementia, was seeing a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

neurologist and she needed a "card[io] consult." (Tr. 534.) As the ALJ concluded, Dr. Boone's assessments consisted of a couple words and usually provide little to no insight into the medical basis of his diagnoses. Instead, it appears Dr. Boone's diagnoses are based upon Plaintiff's self-reports, which the ALJ discredited and Plaintiff has not challenged.

Moreover, a review of the record reveals a lack of medical support for Dr. Boone's sedentary assessment. Dr. Boone's reports were apparently substantially based upon Plaintiff's subjective complaints of pain. In April 2006, Plaintiff underwent testing with cardiologist Sanjeev Vaderah, M.D. (Tr. 267-85.) The results included no evidence of stenosis, normal left ventricular systolic function, no obvious areas of ischemia and mild mitral valve thickening with trace mitral regurgitation. The tests revealed no obvious mitral valve prolapse. (Tr. 271; 273; 275.) An angiogram indicated spasms in the coronary arteries on injection that responded to nitroglycerin. (Tr. 278.) The cardiologist concluded Plaintiff suffered from "chest pain not entirely typical." (Tr. 268.) In December of 2006, Plaintiff returned to the cardiologist Dr. Vaderah, and she was again diagnosed with "atypical chest discomfort." (Tr. 394.) Dr. Vaderah opined that "since she continues to have this discomfort despite long-term nitrates and a trial of calcium channel blockers, I am convinced it is not because of coronary spasm. The coronary induced spasm noted during angiography was simply a result of catheter manipulation." (Tr. 394.)

Similarly, in March, 2004, Plaintiff had a chest x-ray with

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

Ishwar Bhat, M.D. (Tr. 313.) Those tests revealed Plaintiff's lungs were hyperinflated bilaterally, with no pleural effusion or pneumothorax. Dr. Bhat concluded Plaintiff had chronic obstructive pulmonary disease (COPD), but no acute intrathoracic process. (Tr. 313.)

After reviewing Plaintiff's medical records, Dr. Kline concluded that Plaintiff was taking "too many and . . . unnecessary" medications. (Tr. 51.) He noted that Plaintiff's pulmonary function is normal, no evidence exists of fibromyalgia, bipolar or rheumatoid arthritis diagnoses. He stated the psychiatric test results do not support the existence of a bipolar condition, no corroborating evidence exists of the alleged arthritis, and Dr. Kline noted that Plaintiff is a smoker, and regular user of marijuana. (Tr. 45-47.) In sum, Dr. Kline found many of Plaintiff's complaints were unsubstantiated by the medical records.

The ALJ's rejection of treating physician Dr. Boone's sedentary assessment was supported by specific, legitimate reasons supported by the record. In this case, the ALJ did not err in giving greater weight to non-treating physicians.

Plaintiff also argues that the ALJ erred when he considered that Dr. Boone had completed the physical evaluation for DSHS and his opinions regarding her functional capacity were crafted in an effort to assist her DSHS application. (ECF No. 14 at 12.) Plaintiff correctly asserts it is impermissible to reject a medical report based upon the purpose for which it was obtained. (ECF No. 14 at 12.) *Lester,* 81 F.3d at 832 (purpose for which medical reports are obtained does not provide a legitimate basis for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

rejecting them). However, Plaintiff misinterprets the ALJ's reasoning. It is apparent from the opinion that the ALJ found Dr. Boone's DSHS forms lacked reliability not because Dr. Boone was trying to help Plaintiff obtain benefits, but because the DSHS forms filled out by Dr. Boone provided no measurable explanations of Plaintiff's alleged impairments, and contained multiple references indicating the physician was "unsure" and the Plaintiff needed additional consultations with specialists. (Tr. 30.) The ALJ also found that Dr. Boone's own treatment records were inconsistent with the conclusions he provided on the DSHS forms. (Tr. 30.) The reasons provided by the ALJ for rejecting Dr. Boone's opinion were not error.

**2.   Residual Functional Capacity Assessment.**

Plaintiff also contends no evidence exists to support the ALJ's conclusion that Plaintiff is capable of performing medium work activities. (ECF No. 14 at 11.) In addition to Dr. Boone, she relies upon the evaluation of A. Peter Weir, M.D. Dr. Weir examined Plaintiff on June 15, 2006. (Tr. 356-360.) He described her as a "small, lean, adult woman who appears muscular and fit. She is cheerful, pleasant and cooperative." (Tr. 358.) Dr. Weir concluded that Plaintiff could be expected to stand and walk for six hours in an eight-hour day, and that she could be expected to lift or carry 20 pounds occasionally and 10 pounds frequently. (Tr. 360.)

The ALJ noted Dr. Weir's opinion assessed Plaintiff capable of light work activities, and the ALJ accorded this opinion "some weight." (Tr. 29.) The ALJ noted that Dr. Weir's exam did not reveal any abnormalities or difficulties, and he did not find any

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

trigger areas on Plaintiff. (Tr. 30.)  The ALJ concluded that it is possible Dr. Weir "just presumed a 5 foot lean woman could not lift or carry commensurate with medium work activities." (Tr. 30.) Significantly, the ALJ noted that Dr. Weir did not test Plaintiff's exertional abilities, and therefore his conclusion lacked evidentiary support. (Tr. 30.)

Two years later on May 15, 2008, Norman Staley, M.D., reviewed Plaintiff's medical records and found she could occasionally lift 50 pounds and frequently lift 25 pounds. (Tr. 492.) The ALJ found that Dr. Staley's assessment was supported by the record and in light of Plaintiff's diminished credibility, Plaintiff has the ability to perform medium work, despite her claimed impairments. (Tr. 31.) See *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (credibility determinations bear on evaluations of medical evidence when medical opinions conflict or when claimant's subjective complaints and diagnosed condition are inconsistent).

## CONCLUSION

Because substantial evidence reasonably supports the ALJ's analysis and findings, and those findings are not based upon error, the court may not second-guess the ALJ's determination. *Tackett*, 180 F.3d at 1097. Accordingly,

**IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment **(ECF No. 13)** is **DENIED;**

2.  Defendant's Motion for Summary Judgment **(ECF No. 16)** is **GRANTED;**

The District Court Executive is directed to file this

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **DEFENDANT** and the file shall be **CLOSED.**

DATED August 17, 2011.

S/ CYNTHIA IMBROGNO<br>UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14